Karl N. and Peggy Fern Soeder v. Commissioner.
Soeder v. Commissioner
Docket No. 34664.
United States Tax Court
1954 Tax Ct. Memo LEXIS 280; 13 T.C.M. (CCH) 200; T.C.M. (RIA) 54073; March 11, 1954
*280 (1) Petitioner has not established that a debt of $475 became worthless in 1948. (2) Petitioner was a hog and cattle buyer and feeder in 1948. Through an agent he carried on futures transactions in corn, lard and oats. He sustained a loss on these transactions and paid his agent $1,000 for carrying on the transactions. Held, the loss was a capital loss as determined by respondent. Also held, the $1,000 was in the nature of a commission and is to be added as a cost of the futures transactions. (3) Amount of business expenditures determined. John C. Mullen, Esq., for the petitioners. Richard C. McLaughlin, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined a deficiency in income tax in the amount of $12,486.84 for the calendar year 1948. Some of the adjustments made by the respondent are not contested. The questions for decision are: (1) Whether a claimed deduction of $475 for a bad debt is allowable? (2) Whether a payment of $1,000 for services in handling certain transactions on the commodity markets for the petitioner is an allowable deduction? (3) Whether a loss of $4,471.25 *281 sustained by the petitioner in certain futures transactions was an ordinary or capital loss, and (4) Whether the respondent properly disallowed $9,314.43 representing a part of the amount claimed as travel and entertainment expenses? Findings of Fact The petitioners are husband and wife who resided in Omaha, Nebraska, during 1948. Their joint income tax return was filed with the collector of internal revenue for the district of Nebraska. The term "petitioner" when used herein refers to Karl N. Soeder. Issue No. 1 On October 25, 1947, and September 16, 1948, petitioner issued checks payable to or for the benefit of Don Triby totaling $475. The total amount represented a loan to Triby who was a livestock breeder and trader at the Omaha stockyards. Shortly after the last of the funds was advanced Triby left the stockyards and took other employment. Petitioner thereafter contacted Triby and asked for repayment. Triby promised to repay but never did. Petitioner did not employ a lawyer or take any steps, other than to ask for repayment, to collect the amount of the loan. Issues No. 2 and No. 3 Petitioner was engaged in the business of feeding cattle and hogs. He listed his *282 occupation on the tax return as "Hog Buyer." During 1948 petitioner maintained an active account with B. C. Christopher & Co. for trading in the commodity markets. This trading consisted of buying and selling future contracts in corn, oats and lard. The "Bought" and "Sold" transactions totalled about 120 during the year and consisted mostly of lard and corn contracts. Much of the trading was carried on for petitioner's account by C. E. Blomquist pursuant to petitioner's authorization. Petitioner paid Blomquist $1,000 in 1948 for carrying on these trading accounts. The amount of the payment was not determined on a commission basis, had no demonstrable relation to the amounts involved and there was no written or verbal agreement between petitioner and Blomquist specifically settling on the amount of compensation. Petitioner did not actually take possession of any grain which he bought on the commodity market in 1948. Most cattle feeders do not buy and sell grain futures as a part of their business. Petitioners reported a loss of $4,471.25 from "grain trade" based on the foregoing transactions on Schedule E (Income from Partnerships, Estates and Trusts and Other Sources) on their *283 1948 return. The respondent determined this loss was a capital loss not allowable against partnership income and allowed the loss as a short-term capital loss to the extent of $1,000 plus the amount of $104.66 to offset a long-term capital gain reported. Issue No. 4 On their income tax return for 1948 the petitioners claimed a deduction of $10,685.54 for travel expense which included meals and lodging while away from home, automobile expenses, entertainment expenses for packing house buyers, attendance at conventions, lunches for employees and customers and telephone and telegraph charges. Of this amount the respondent disallowed $9,314.43 because that amount "has neither been substantiated nor established to be an ordinary and necessary business expense." Petitioner did not keep records of the claimed expenditures from which the amounts expended in connection with his business could readily and accurately be determined. A portion of the claimed expenditures were personal in nature. No more than a total of $6,500 was expended by petitioner for business purposes in 1948 and of the $10,685.54 claimed on Schedule C of the return, the amount of $6,500 should be allowed. Opinion
*284 Issue No. 1 We assume petitioner advanced $475 to Don Triby as a loan, the total being the aggregate amount of checks issued beginning in October 1947 and ending September 16, 1948. Petitioner's contention is that this loan became worthless in 1948. The evidence as to worthlessness is, in our opinion, wholly insufficient to carry the burden of proof which petitioner is required to carry in order to justify the 1948 deduction. The due date of the loan is not established. The financial condition of the debtor in 1948, the claimed year of loss, is left in the air. No serious attempts to collect the debt in that year can be found in the evidence. True, petitioner did request payment in 1948 on several occasions and as a result elicited promises to make future payments, with no immediate results. We cannot say the failure to obtain immediate repayments is the equivalent of worthlessness of the debt. Certainly refusal of a debtor to make good a promise to repay does not, in our opinion, furnish definite proof of worthlessness. We decide against petitioner on this point for failure to carry his burden of proof. Issues No. 2 and No. 3 As we understand it, petitioner's contention *285 here is that the loss incurred in his futures dealings and the amount paid to Blomquist for carrying on the futures transactions for him are ordinary and necessary business expenses and so deductible in toto. Respondent has determined the loss claimed on these transactions to be a capital loss, and the amount of Blomquist's fees to be in the nature of a commission. Accordingly, respondent maintains he properly treated these amounts not as business expenses, but as capital items. We think on the facts that respondent was correct. We accept as facts that petitioner was a cattle and hog buyer and feeder in 1948 and that it was necessary for him to buy feed with which to feed the hogs and cattle which he purchased and fed. Nevertheless, the record fails to establish that his grain futures purchases and sales were "hedging" operations so connected with his business that he is justified in claiming an "ordinary" loss thereon. The only indication as to the amount of grain which petitioner required for feeding purposes is the cost thereof reported on the income tax return for 1948, i.e., some $32,000. This, of course, does not "prove" that that amount was actually expended. Even so, the *286 relation of this amount to the futures transactions is nowhere established. Petitioner argues in his testimony that his grain trading was carried on so that he could in some way establish and control what his overall feeding cost for the year would be. But at the same time he testified that futures trading was carried on for him by Blomquist because he himself had no time apart from his cattle buying to pay attention to the grain market. There is nothing in the record to tie in the grain futures transactions with actual feed needs and nothing to show that Blomquist was ever apprised of petitioner's feed requirements or ever calculated those transactions with an eye to equalizing petitioner's feeding needs and costs. Petitioner never took possession of or fed any of the grain involved in the futures deals. Furthermore, the testimony leaves us in the dark as to any demonstrable relation between petitioner's futures dealings and his cattle and hog business. A summary of the futures transactions is in evidence. It shows 1948 losses in lard futures as $11,240 and losses in corn futures as $8,712.50. On his return petitioner claimed an ordinary loss of $4,471.25 resulting from "grain *287 trade." How this loss was computed is a mystery on the record. Were the lard futures ignored? Was only a part of the corn loss claimed? We do not know. On the facts, we conclude that petitioner was simply attempting to supplement his income by engaging in the commodity markets, the same as the ordinary business or professional man sometimes seeks to increase his income by buying and selling stocks. In the circumstances we hold that petitioner has not demonstrated any error in the respondent's determination that the loss from the futures transactions was a short-term capital loss. The fees paid Blomquist were in the nature of a commission and should be added as an additional cost of the commodity futures. ; . Issue No. 4 This issue presents the usual fact question found in many business expense controversies. Respondent has disallowed a substantial portion of the claimed deduction for lack of substantiation and failure to demonstrate that the claimed expenditures were "ordinary and necessary" business expenses. At the hearing petitioner put in evidence large *288 numbers of cancelled checks to substantiate his claim, testifying that the amounts thereof were expended for business purposes. The testimony was general in nature. In the absence of convincing evidence that every penny claimed was actually expended for business purposes, and in view of our findings that at least a portion thereof was for personal purposes, we make use of the principle of , and determine that $6,500 instead of the amount determined by respondent should have been allowed by respondent as a deduction. We recognize the difficulties of proof on issues of this character and must of necessity use our best judgment on the evidence presented. Decision will be entered under Rule 50.